UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HIGHLAND HOLDINGS, INC., et al.,

    Plaintiffs,

v.                                                   CASE NO. 8:14-cv-1334-T-23TBM

MID-CONTINENT CASUALTY
COMPANY,

    Defendant.
_____/

**FOREWORD**

Mid-Continent's response (Doc. 50) to Highland Holdings' motion for summary judgment is disguised as a paper that conforms both to Local Rule 1.05(a), which requires each "paper[] tendered by counsel for filing [to] be typewritten, double-spaced, [and] in at least twelve-point type," and to Local Rule 3.01(b), which limits the length of a response to "not more than twenty (20) pages." Although neither rule explicitly proscribes manipulative letterspacing,[1] the Local Rules assume that counsel engages in no manipulation to evade the effect of the rules and assume counsel's use of the standard space between consecutive letters. Quite transparently, Mid-Continent's response manipulates the space between consecutive characters in the response and adds approximately two words to each line. Tactics such as Mid-Continent's

---

[1] "*Letterspacing* (also known as *character spacing* or *tracking*) is the adjustment of the horizontal white space between the letters in a block of text." Matthew Butterick, *Typography for Lawyers* 92 (2d ed. 2015).

letterspacing contribute to a burgeoning set of Local Rules, a phenomenon caused not by persnickety judges but by parties' relentless efforts to gain an advantage by subverting a set of rules designed to ensure parity.  Counsel is admonished; an attempt to subvert the Local Rules exposes the offending counsel to sanction.

## **ORDER RESOLVING THE MOTIONS FOR SUMMARY JUDGMENT**

Home Design Services, Inc., sued Highland Holdings, Inc., for copyright infringement.  Highland Holdings sues (Doc. 1) the insurer Mid-Continent Casualty Company for a declaration that Mid-Continent must reimburse any damages (or settlement money) that might result from the underlying action.  Although the initial complaint (Doc. 1) in this action asks only for a declaration (Count I), after settling the underlying action for $650,000 Highland Holdings amends (Doc. 25) the complaint to add a claim for breach of the insurance agreement and for reimbursement of the settlement money (Count II).  Mid-Continent counterclaims for a declaration that Mid-Continent need not reimburse any portion of the settlement money.[2]  Each party moves (Docs. 42, 43) for summary judgment on each claim.

---

[2] Mid-Continent asserts seven counterclaims (Doc. 32) against Highland Holdings. However, each purported counterclaim is an argument in support of a claim for a declaration that Mid-Continent "does not owe a duty to indemnify Highland Homes for the $650,000 settlement amount." (Doc. 32 at 15) Under Rule 8(c)(2), Federal Rules of Civil Procedure, "[i]f a party mistakenly designates a defense as a counterclaim . . . the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so." Mid-Continent's seven counterclaims are construed as arguments in support of one counterclaim for a declaration that Mid-Continent "does not owe a duty to indemnify Highland Homes for the $650,000 settlement amount." (Doc. 32 at 15)

## DISCUSSION

Highland Holdings constructs homes based on select designs and advertises these designs on a website.  Home Design sued Highland Holdings for copyright infringement and alleged that Highland Holdings advertised copyrighted designs on Highland Holdings' website, created schematic plans based on copyrighted designs, and constructed homes based on copyrighted designs.  At the time Highland Holdings advertised the contested designs, Mid-Continent insured Highland Holdings against "advertising injury liability."  The insurance agreement states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . ["]advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for . . . ["]advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

(Doc. 32-2 at 15)  The agreement includes in the definition of "advertising injury" an injury "arising out of . . . [i]nfringing upon another's copyright . . . in your advertisement."  (Doc. 32-2 at 23–24)  The agreement defines "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."  (Doc. 32-2 at 22)

Highland Holdings argues (1) that Mid-Continent must reimburse the entire amount that Highland Holdings paid to settle the underlying action; (2) that, even if Highland Holdings cannot recover the entire amount, Highland Holdings can recover at least a portion of the amount; (3) that Highland Holdings paid a "reasonable" amount to settle the claims covered by the insurance agreement; (4) that Mid-Continent is not entitled to a setoff; and (5) that Highland Holdings justifiably rejected Mid-Continent's help in defending against the underlying action.  Mid-Continent disputes each argument.

**1. The insurance agreement covers only a portion of the settled claims.**

Highland Holdings argues that Mid-Continent must reimburse the entire amount that Highland Holdings paid to settle the underlying action.[3]  However, Highland Holdings fails to meet the burden "on the insured to prove that the insurance [agreement] covers" each settled claim.  *See East Florida Hauling, Inc. v. Lexington Ins. Co.*, 913 So. 2d 673, 678 (Fla. 3d DCA 2005) (Cortinas, J.).  Although the insurance agreement covers only those claims of "advertising injury," the settlement agreement settles "all claims" asserted by Home Design in the underlying action (Doc. 42-4 at 1), including both the claim accusing Highland Holdings of creating a schematic plan based on a copyrighted design and the claim accusing Highland Holdings of constructing a

---

[3] Although the insurance agreement requires Mid-Continent to pay the "damages" "that the insured becomes legally obligated to pay" (Doc. 32-2 at 15), neither party disputes that "damages" includes settlement money.

home based on a copyrighted design.  *See Arthur Rutenberg Homes, Inc. v. Maloney*, 891 F. Supp. 1560, 1567 (M.D. Fla. 1995) (finding that the defendant infringed copyright of an architectural work by engaging in acts other than advertising — creating "floorplans" and constructing homes based on the "floorplans").  Further, "all claims" in the underlying action (Doc. 42-4 at 1) includes the claim accusing Highland Holdings of advertising a copyrighted design after Highland Holdings received a cease-and-desist letter.  The insurance agreement excludes claims for "advertising injury . . . caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict . . . advertising injury."[4]  (Doc. 32-2 at 15)  Because Highland Holdings settled more than the covered claims, Highland Holdings cannot recover the entire settlement amount.

Arguing for reimbursement of the entire settlement amount, Highland Holdings attempts to expand the definition of "advertisement."  Highland Holdings' motion for summary judgment recites the testimony of Neal L. O'Toole, one of Highland Holdings' counsel, who states, "[B]ecause we do not build homes until we have people who have signed the contract to buy them . . . it almost verges on idiotic that we would have to somehow prove that a person who bought the home looked at the layout before

---

[4] Highland Holdings argues only that Highland Holdings first advertised the copyrighted designs before receipt of the cease-and-desist letter and fails to justify the decision to continue advertising the designs after receipt of the letter.

they bought it."[5]  (Doc. 35 at 78; Doc. 45 at 17)  However, Highland Holdings erroneously assumes that a "layout"— i.e., a schematic plan — is an advertisement.[6] Although an advertisement might feature a schematic plan and although a prudent purchaser of a home would review a schematic plan before authorizing construction, a schematic plan is not necessarily "broadcast or published . . . for the purpose of attracting customers or supporters" and is not an advertisement.  (*See* Doc. 32-2 at 22) *See State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) ("Florida courts start with the plain language of the policy, as bargained for by the parties.").

Arguing for reimbursement of the entire settlement amount, Highland Holdings attempts to expand the definition of "advertising injury," which the insurance agreement defines as an injury "arising out of . . . infringing upon another's copyright . . . in your advertisement."  (Doc. 32-2 at 24–25)  "Arising out of " necessitates a show of causation between the advertisement and the injury.[7] *See Steinberg*, 393 F.3d at 1231 (requiring based on a similar insurance provision "some

---

[5] Also, Highland Holdings argues, "Customers never buy houses sight unseen; the homebuyer always sees the advertising design before deciding to make a purchase." (Doc. 42 at 9)

[6] Also, Highland Holdings' motion for summary judgment conflates "advertisement" and "floor plan." (Doc. 45 at 18)

[7] Arguing that Highland Holdings must establish causation between the advertisement and the injury, Mid-Continent highlights the phrase "because of " in the sentence "We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . [']advertising injury['] to which this insurance applies." (Doc. 32-2 at 15) However, "because of " necessitates a show of causation between the injury and the "damages" (or settlement money), not a show of causation between the advertisement and the injury.

causal connection between the advertising injury and the advertising activity"). By arguing that an advertisement featured a copyrighted design before a purchaser hired Highland Holdings to construct a home based on that design, Highland Holdings attempts to establish that the advertisement caused the purchaser to hire Highland Holdings. However, inferring causation from temporal sequence is fundamentally fallacious reasoning and is wholly insufficient to establish that each claim in the underlying action "arises out of " Highland Holdings' advertisement of a copyrighted design.[8] Arguing that a purchaser must examine an advertisement before authorizing construction of a home overlooks the many other methods available to a prudent purchaser to view the "layout" of a home, methods such as consulting Highland Holdings in person or visiting a model home. Highland Holdings fails even to acknowledge the existence of these alternatives. Highland Holdings fails to meet the burden "on the insured to prove that the insurance [agreement] covers" each settled claim. *See East Florida Hauling*, 913 So. 2d at 678.

---

[8] *See United States v. Valencia*, 600 F.3d 389, 425 (5th Cir. 2010) (per curiam) ("Evidence of mere correlation, even a strong correlation, is often spurious and misleading when masqueraded as causal evidence, because it does not adequately account for other contributory variables."); *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 885 (10th Cir. 2005) (McKay, J.) ("A correlation does not equal causation.").

**2. Highland Holdings cannot recover the money paid to settle claims covered by the insurance agreement.**

Highland Holdings argues that, even if Highland Holdings cannot recover the entire settlement amount, Highland Holdings can recover at least a portion of the amount. However, "Florida law clearly requires the party seeking recovery . . . to allocate any settlement amount between covered and noncovered claims," *Bradfield v. Mid-Continent Cas. Co.*, 2015 WL 6956543, at *24 (M.D. Fla. Nov. 10, 2015) (Hodges, J.), and Highland Holdings fails to establish what portion of the $650,000 settles claims covered by the insurance agreement. Failure to establish how much the insured paid to settle covered claims "precludes recovery." *Trovillion Const. & Dev., Inc. v. Mid-Continent Cas. Co.*, 2014 WL 201678, at *8 (M.D. Fla. Jan. 17, 2014) (Dalton, J.).

Disputing the existence of a burden on the insured to establish the amount paid to settle covered claims, Highland Holdings distinguishes *Bradfield*, 2015 WL 6956543, at *24, one of many cases establishing the burden. The crux of Highland Holdings' argument is that *Bradfield* involved a "*Coblentz* agreement," under which an insured, such as Highland Holdings, settles an action against the insured and assigns to the plaintiff the claim for indemnification from the insurer. *Bradfield*, 2015 WL 6956543, at *24 (citing *Coblentz v. Am. Sur. Co. of New York*, 416 F.2d 1059, 1062 (5th Cir. 1969)). In exchange for the assignment, the plaintiff releases the insured from liability under the settlement. Highland Holdings argues that, because the insured entering into a *Coblentz* agreement never has to pay the settlement money to the assignee, the insured has less

- 8 -

incentive to negotiate a "realistic" settlement amount. (Doc. 45 at 13 (citing *Steil v. Florida Physicians' Ins. Reciprocal*, 448 So. 2d 589, 592 (Fla. 2d DCA 1984) (Grimes, J.)).

Although the need to confirm the veracity of a settlement amount is greater for a settlement by the assignee of a *Coblentz* agreement, the burden on a plaintiff to establish the amount paid to settle a covered claim is not limited to an assignee of a *Coblentz* agreement. Several state and federal cases exemplify the existence of the burden on a plaintiff who is not a party to a *Coblentz* agreement. *See, e.g.*, *Metro. Dade Cty. v. Florida Aviation Fueling Co.*, 578 So. 2d 296, 298 (Fla. 3d DCA 1991) (per curiam); *Guarantee Ins. Co. v. Gulf Ins. Co.*, 628 F. Supp. 867, 870 (S.D. Fla. 1986) (Hastings, J.); *Keller Indus., Inc. v. Employers Mut. Liab. Ins. Co. of Wisconsin*, 429 So. 2d 779, 780 (Fla. 3d DCA 1983) (Hendry, J.); *cf. Am. Cas. Co. of Reading Pennsylvania v. Health Care Indem., Inc.*, 613 F. Supp. 2d 1310, 1321 (M.D. Fla. 2009) (Covington, J.) (faulting an insured for failing to "request a special verdict" specifying what "portion of the judgment" is covered under an insurance agreement). In fact, in support of this burden, *Bradfield* cites *Jones v. Holiday Inns, Inc.*, 407 So. 2d 1032, 1034 (Fla. 1st DCA 1981) (Shivers, J.); and *Universal Underwriters Ins. Corp. v. Reynolds*, 129 So. 2d 689, 691 (Fla. 2d DCA 1961) (Shannon, J.), neither of which involves a *Coblentz* agreement.

Highland Holdings admits that the settlement agreement contains no distinction between covered and "uncovered" claims. (Doc. 45 at 3) The settlement agreement lists only a lump sum ($650,000) that Highland Holdings must pay to settle "all claims [that were] raised or that could have been raised" in the underlying action. (Doc. 42-4 at 1) The settlement agreement contains neither a schedule of amounts allocated to settling each claim nor any other indication of how Highland Holdings and Home Design chose $650,000. However, Highland Holdings argues (correctly) that "[t]here is no requirement that such burden must be carried out within the settlement agreement itself." (Doc 42 at 19) *See Bradfield*, 143 F. Supp. 3d at 1215; *Trovillion*, 2014 WL 201678, at *8; *Florida Aviation*, 578 So. 2d at 298.

Attempting to calculate the percentage of $650,000 that settles covered claims, Highland Holdings divides the number of homes constructed based on a copyrighted design advertised during the insurance policy period by the number of homes constructed based on a copyrighted design (regardless of whether the design was advertised within the claims period of the insurance policy). This simplistic calculation assumes that the settling parties assigned the same value to each home. An attachment (Doc. 42-4 at 8–19) to the settlement agreement lists the array of closing prices of the homes and readily rebuts this assumption. Further, the calculation fails to account for the many acts, other than advertising and such as creating a schematic plan based on a copyrighted design and constructing a home based on a copyrighted design, that

allegedly infringed Home Design's copyrights. Finally, the calculation fails to subtract from the covered claims the claims that after receipt of a cease-and-desist letter Highland Holdings advertised a copyrighted design.[9] Highland Holdings not only failed to specify in the settlement agreement the amount paid to settle the covered claims but fails to offer a feasible strategy to discern the amount.

**3. Highland Holdings' inability to establish the amount paid to settle the covered claims eviscerates Highland Holdings' remaining arguments.**

Highland Holdings argues that Highland Holdings paid a "reasonable" amount to settle the covered claims. However, Highland Holdings fails to establish how much Highland Holdings paid to settle the covered claims, and a jury cannot determine whether an undetermined amount is "reasonable."

Highland Holdings' argument that Mid-Continent is not entitled to a setoff is likewise eviscerated by Highland Holdings' inability to establish the amount paid to settle the covered claims.

Finally, Highland Holdings argues that Highland Holdings justifiably rejected Mid-Continent's help in defending against the underlying action. Rather than stating the legal significance of the rejection, the parties quarrel about the "real reason" behind Highland Holdings' rejection. Whether an insured justifiably rejected an insurer's help is significant if either the insurer uses the rejection to prevent recovery under the

---

[9] As the first section discusses, the insurance agreement excludes claims for "advertising injury . . . caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict . . . advertising injury." (Doc. 32-2 at 15)

insurance agreement, *see Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1149 (11th Cir. 2010), or the insured seeks reimbursement of litigation costs. *See Continental Cas. Co. v. City of Jacksonville*, 283 Fed. Appx. 686, 689–90 (11th Cir. 2008) (per curiam). Mid-Continent's motion for summary judgment contains no argument that Highland Homes "improperly rejected the defense."[10] (Doc. 43 at 2) Further, Highland Holdings sues for reimbursement of the settlement money, not for the costs of litigating the underlying action.

## CONCLUSION

Highland Holdings' motion (Doc. 42) for summary judgment is **DENIED**, and Mid-Continent's motion (Doc. 43) for summary judgment is **GRANTED**. The clerk is directed (1) to enter a judgment for Mid-Continent and against Highland Holdings in Counts I and II of the complaint and in the counterclaim, (2) to terminate any pending motion, and (3) to close the case.

ORDERED in Tampa, Florida, on June 23, 2016.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[10] The motions states only that "[a]ny arguments herein are not intended to waive [Mid-Continent]'s argument that Highland Homes improperly rejected the defense." (Doc. 43 at 2 n.1)